UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TONYA A. STOTTLAR,

                          Plaintiff,

v.                                                5:15-CV-0340
                                                  (GTS)
CAROLYN W. COLVIN
Commissioner of Social Security,

                          Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

IACONIS LAW OFFICE, PLLC                          PAUL F. IACONIS, ESQ.
  Counsel for Plaintiff
501 Genesee Street
Chittenango, NY 13037

U.S. SOCIAL SECURITY ADMIN.                       DAVID B. MYERS, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Tonya A. Stottlar,

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on

the pleadings.  (Dkt. Nos. 28, 33.)  For the reasons set forth below, Plaintiff's motion for

judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is

granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff obtained a certificate of general educational development (GED), and has past work as a cashier and a customer service representative.  Generally, Plaintiff's alleged disability consists of swollen hands, depression, anxiety, irritable mood, low interest, and passive suicidal ideation.

### B.    Procedural History

#### i.    Plaintiff's Application of January 23, 2008

On January 23, 2008, Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning July 4, 2006.  (T. 25, 64.)[1] Plaintiff's application was initially denied on May 30, 2008, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  (T. 64.)  Subject to informal remand, the application was returned to the State agency level for further development and determination. (*Id.*)  The State agency determined that Plaintiff's claim could not be approved and returned it to the hearing level.  (*Id.*)  On January 7, 2010, Plaintiff appeared in a video hearing before the ALJ, Robert E. Gale.  (*Id.*)  On June 7, 2010, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 55-77.)  On November 13, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 25.)  Thereafter, Plaintiff filed a civil action in the United States District Court for the Northern District of New York.  (*Id.*)  On August 13, 2014, the District Court denied Plaintiff's motion for judgment on the pleadings and affirmed the final decision of the Commissioner.  *Stottlar v. Colvin*, 13-cv-0047, 2014 WL 3956628, at *20 (Aug. 13, 2014).

---

[1]    Page citations refer to the page numbers used on CM/ECF rather than the actual page numbers contained in the parties' respective motion papers.

### ii.     Plaintiff's Application of July 28, 2011

On July 28, 2011, Plaintiff applied for a period of disability and Disability Insurance Benefits, alleging disability beginning June 8, 2010.  (T. 25.)  Plaintiff's application was initially denied on September 22, 2011, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.*)  On March 20, 2013 and August 6, 2013, Plaintiff appeared in hearings before the ALJ, Jennifer Gale Smith.  (T. 374-441.)  At the hearing, Plaintiff amended her alleged onset date to August 4, 2010.  (T. 25.)  On August 16, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 16-38.)  The ALJ's decision noted that, because Plaintiff amended her onset date to August 4, 2010, the ALJ's decision did not disturb the previously adjudicated period discussed above in Part I.B.i. of this Decision and Order.  (*Id.*)  On January 20, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 22-24.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.     The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 27-38.)  First, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2011, and did not engage in substantial gainful activity during the period from her amended alleged onset date of August 4, 2010, through her date last insured of March 31, 2011.  (T. 27.)  Second, the ALJ found that Plaintiff's bilateral de Quervain's tenosynovitis, anxiety, and depression were severe impairments, but that Plaintiff's neck and back pain, fibromyalgia, diabetes, hyperlipidemia, pulmonary nodules, and obesity were not severe impairments during the relevant time period.  (T. 27-30.)  Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, did not meet or medically

equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings").  (T.

30-31.)  The ALJ considered Listings 1.02 (major dysfunction of a joint), 12.04 (affective

disorders), and 12.06 (anxiety-related disorders).  (*Id.*)

Fourth, the ALJ found that, through the date last insured, Plaintiff had the residual

functional capacity ("RFC")

> to lift up to ten pounds continuously, eleven to twenty pounds
> frequently, and twenty-one to fifty pounds occasionally.  The
> claimant can sit for six hours in an eight-hour workday and for two
> hours at a time without interruption.  The claimant can walk for four
> hours in an eight-hour workday and for two hours at a time without
> interruption.  The claimant can stand for two hours in an eight-hour
> workday and for two hours without interruption.  The claimant can
> frequently reach, handle, push, and pull.  The claimant can frequently
> operate foot pedals with both feet and can frequently climb stairs and
> ramps, stoop, kneel, crouch, and balance.  The claimant is limited to
> simple routine, repetitive tasks with occasional interaction with the
> public and occasional supervision.

(T. 31-36.)  Fifth, the ALJ found that Plaintiff was unable to perform any past relevant work.  (T.

36.)  Sixth, and finally, the ALJ found that there were other existing jobs in the national

economy that Plaintiff could have performed through the date last insured.  (T. 37-38.)

### D.     The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff asserts eight arguments in support of her motion for judgment on the

pleadings.  First, Plaintiff argues that the Appeals Council failed to consider her entire letter

memorandum accompanying her request for review of the hearing decision.  (Dkt. No. 28, at 28-

30 [Pl.'s Mem. of Law].)  Second, Plaintiff argues that the Appeals Council's failure to consider

fer entire letter memorandum was a denial of administrative due process.  (*Id.* at 30-32.)  Third,

Plaintiff argues that the ALJ failed to develop the record by not recontacting treating

psychiatrist Thomas Schwartz, M.D., to explain any inconsistencies between his treatment notes

4

and his opinion of Plaintiff's "marked" mental limitations.  (*Id.* at 32-33.)  Fourth, Plaintiff

argues that the ALJ committed reversible error by failing to afford adequate weight to all of Dr.

Schwartz's opinions.  (*Id.* at 33-36.)  Fifth, Plaintiff argues that the ALJ erred in weighing the

mental opinion of psychiatrist and medical expert Aaron Satloff, M.D.  (*Id.* at 36-38.)  Sixth,

Plaintiff argues that the ALJ erred in weighing the physical opinion of orthopedic surgeon and

medical expert John Axline, M.D.  (*Id.* at 36-38.)  Seventh, Plaintiff argues that the ALJ erred in

weighing the physical opinion of treating internist Muftah Kadura, M.D.  (*Id.* at 38-40.)  Eighth,

and finally, Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility.  (*Id.* at 41.)

Generally, Defendant asserts four arguments in support of her motion for judgment on

the pleadings.  First, Defendant argues that the letter memorandum from Plaintiff's counsel is not

new and material evidence.  (Dkt. No. 33, at 16-17 [Def.'s Mem. of Law].)  Second, Defendant

argues that the ALJ appropriately evaluated Plaintiff's alleged mental impairments.  (*Id.* at 18-

22.)  Third, Defendant argues that the ALJ properly weighed the evidence regarding Plaintiff's

alleged physical limitations.  (*Id.* at 22-24.)  Fourth, and finally, Defendant argues that the ALJ

properly evaluated Plaintiff's credibility.  (*Id.* at 24-25.)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether

an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906

F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if

the correct legal standards were not applied, or it was not supported by substantial evidence.  *See*

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for

doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act.  20 C.F.R. § 404.1520.  The

Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental ability
> to do basic work activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in Appendix
> 1 of the regulations.  If the claimant has such an impairment, the
> [Commissioner] will consider him disabled without considering
> vocational factors such as age, education, and work experience; the
> [Commissioner] presumes that a claimant who is afflicted with a
> "listed" impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has
> the residual functional capacity to perform his past work.  Finally, if
> the claimant is unable to perform his past work, the [Commissioner]
> then determines whether there is other work which the claimant could
> perform.  Under the cases previously discussed, the claimant bears
> the burden of the proof as to the first four steps, while the
> [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146,

150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

**III.     ANALYSIS**

For the ease of analysis, Plaintiff's arguments will be reorganized and consolidated

below.

**A.** **Whether the ALJ's Assessment of the Medical Opinion Evidence was Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 33, at 18-24 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Under the "treating physician's rule," controlling weight is afforded to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is not inconsistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(c)(2); *Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015), *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion. *Greek,* 801 F.3d at 375*; Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, or when assessing a medical opinion from another source, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the frequency, length, nature and extent of the physician's treatment, (2) the amount of medical evidence supporting the opinion, (3) the consistency of the opinion with the remaining medical evidence, and (4) whether the physician is a specialist. 20 C.F.R. § 404.1527(c); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004) (listing regulatory factors).

**i.** **Treating Psychiatrist Dr. Schwartz**

On December 9, 2009, Dr. Schwartz provided an opinion of Plaintiff's mental abilities and limitations due to her depression, anxiety, and panic. (T. 833-37.) Therein, Dr. Schwartz

opined that Plaintiff had "marked" limitation in her ability to make judgments on complex work-related decisions; and interact appropriately with the public and supervisors; and had "moderate" limitation in her ability to understand, remember, and carry out complex instructions; interact appropriately with coworkers; and respond appropriately to usual work situations and changes in a routine work setting.[2]  (T. 835-36.)  Dr. Schwartz further opined that Plaintiff had "mild" limitation in her ability to make simple work-related decisions; and had no limitation in her ability to understand, remember, and carry out simple instructions.[3]  (*Id.*)  Dr. Schwartz indicated that Plaintiff's limitations were present since March 2006.  (T. 833.)

On October 20, 2011, Dr. Schwartz opined that Plaintiff could not work in any high stress setting which required intense interpersonal or group activity due to her significant anxiety and depression.  (T. 716.)  Dr. Schwartz further opined that Plaintiff likely could not work in a physically intensive environment due to her "physical disability with her hands."  (*Id.*)

On April 10, 2013, Dr. Schwartz opined that Plaintiff was "unable to meet competitive standards" in her ability to maintain attention for two-hour segments; maintain regular attendance and be punctual; work in coordination with or in proximity to others without being unduly distracted; complete a normal workday without interruptions from psychologically based symptoms; perform at a consistent pace without unreasonable rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; deal with normal work stress; deal with the stress of semiskilled and skilled work; interact appropriately with the general

---

[2]	The assessment form stated that "marked" indicated serious limitation in the area and a substantial loss in the ability to function effectively.  (T. 835.)  "Moderate" indicated more than a slight limitation in the area, but the individual is still able to function satisfactorily.  (*Id.*)

[3]	The assessment form stated that "mild" indicated a slight limitation in the area, but the individual can generally function well.  (T. 835.)

public; maintain socially acceptable behavior; and adhere to basic standards of neatness and cleanliness. (T. 961-62.) Dr. Schwartz further opined that Plaintiff was "seriously limited, but not precluded" in her ability to remember work-like procedures; sustain an ordinary routine without special supervision; respond appropriately to changes in a routine work setting; and be aware of normal hazards and take appropriate precautions. (*Id.*) Finally, Dr. Schwartz opined that Plaintiff was "limited but satisfactory" in her ability to understand, remember, and carry out very short and simple instructions; make simple work-related decisions; and ask simple questions or request assistance. (*Id.*)

### ii. Psychiatrist and Medical Expert Dr. Satloff

On March 29, 2013, Dr. Satloff provided an opinion of Plaintiff's ability to perform work-related mental activities. (T. 939-41.) Therein, Dr. Satloff opined that Plaintiff had "marked" limitation in making judgments on complex work-related decisions; and interacting appropriately with the public and supervisors; and had "moderate" limitation in understanding, remembering, and carrying out complex instructions; interacting with coworkers; and responding appropriately to usual work situations and changes in a routine work setting.[4] (T. 939-40.) Dr. Satloff further opined that Plaintiff had "mild" limitation in making judgments on simple work-related decisions; and had no limitation understanding, remembering, and carrying out simple instructions.[5] (*Id.*)

---

[4] The assessment form stated that "marked" indicated serious limitation in the area and a substantial loss in the ability to function effectively. (T. 939.) "Moderate" indicated more than a slight limitation in the area, but the individual is still able to function satisfactorily. (*Id.*)

[5] The assessment form stated that "mild" indicated a slight limitation in the area, but the individual can generally function well. (T. 939.)

In determining Plaintiff's mental RFC, the ALJ afforded "great" weight to Dr. Satloff's opinion and Dr. Schwartz's opinions from December 2009 and October 2011, reasoning that these opinions were largely consistent with the objective medical evidence and one another.[6] (T. 33-34.)  However, the ALJ afforded "limited" weight to Dr. Schwartz's opinion that Plaintiff was not able to work in a physically intensive environment, reasoning that Dr. Schwartz did not treat Plaintiff's physical conditions and his opinion did not provide a function by function assessment of Plaintiff's physical abilities and limitations.  (T.33.)  Additionally, the ALJ afforded "limited" weight to Dr. Schwartz's April 2013 opinion, reasoning that the highly restrictive opinion was contradicted by his own treatment notes.  (T. 34.)

For example, the ALJ noted that while Dr. Schwartz described Plaintiff's depression as severe to moderate in August 2010, his subsequent treatment notes indicated that her depressive symptoms improved such that her condition was described as mild.  (*Id.*)  The ALJ further noted that, in November 2010, Plaintiff reported that her depression was well controlled with medication, her anxiety was improving with medication, and Dr. Schwartz observed that Plaintiff's mental functioning was largely within normal range.  (*Id.*)  In November 2010, Dr. Schwartz also observed that Plaintiff's affect was much brighter and reactive, her thought processes were fully organized, her thought content was normal, and her attention and concentration were intact.  (T. 669.)  Finally, the ALJ noted that Dr. Schwartz routinely assessed Plaintiff with Global Assessment of Functioning ("GAF") scores of 60, indicating only moderate

---

[6]     For example, the ALJ noted that Dr. Satloff's opinion reflected the functional limitations identified in Dr. Schwartz's December 2009 opinion.  (T. 33.)

symptoms.[7]  (T. 34.)  The ALJ noted that by August 2011, after Plaintiff's date last insured, Dr. Schwartz assessed that Plaintiff's depression was nearing remission and assigned her a GAF score of 70, indicating only mild symptoms.[8]  (*Id.*)

The Court rejects Plaintiff's argument that the ALJ should have afforded controlling weight to all of Dr. Schwartz's opinions for the following four reasons.  First, it is the duty of the ALJ, not a medical source, to formulate a plaintiff's RFC.  20 C.F.R. § 404.1545.  Accordingly, an ALJ is not required to adhere to the entirety of one medical source's opinion.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).  Further, an ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony."  *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (finding that the ALJ was not required to reconcile two apparently inconsistent medical opinions; it was sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision).

[7]    The GAF "rates overall psychological functioning on a scale of 0-100 that takes into account psychological, social, and occupational functioning."  *Zabala v. Astrue*, 595 F.3d 402, 405 n.1 (2d Cir. 2010). A GAF score of 51 to 60 indicates moderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers.)  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. rev. 2000) ("DSM-IV").

[8]    A GAF score of 61 to 70 indicates some mild symptoms (*e.g.*, depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy or theft within the household), but the individual is generally functioning pretty well and has some meaningful interpersonal relationships.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. rev. 2000) ("DSM-IV").

Second, an ALJ is not required to afford controlling weight to a treating physician's opinion where, as here, the treating physician's opinion conflicted with his own treatment notes. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (finding that an ALJ was not required to afford controlling weight to a physician's opinion that conflicted with his own treatment notes). Third, an ALJ is not required to afford controlling weight to a treating physician's opinion where, as here, "the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran,* 364 F.3d at 32; *Burgess,* 537 F.3d at 128. In this case, Dr. Schwartz's highly restrictive opinion from April 2013 conflicted with his own treatment notes and the opinion of medical expert Dr. Satloff.

Fourth, the ALJ properly applied the regulations in evaluating Dr. Schwartz and Dr. Satloff's opinions. As discussed above, the ALJ considered Dr. Schwartz and Dr. Satloff's professional credentials, Dr. Schwartz's treating relationship with Plaintiff and treatment notes, and the consistency of Dr. Schwarz and Dr. Satloff's opinions with other medical evidence in the record pursuant to 20 C.F.R. § 404.1527(c). (T. 30-36.) Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review each and every factor of the regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where plaintiff challenged ALJ's failure to review each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

Next, the Court turns to Plaintiff's argument that the ALJ improperly relied on Dr. Satloff's opinion because he did not review Plaintiff's complete medical record. (Dkt. No. 28, at 36-38 [Pl.'s Mem. of Law].) More specifically, Plaintiff argues that Dr. Satloff did not review medical evidence from after Plaintiff's date last insured on March 31, 2011, including Dr.

Schwartz's subsequent treatment records and April 2013 opinion. (*Id.*) Plaintiff also acknowledges, however, that "the analysis of disability has to be relevant to the date prior to the date last insured." (*Id.*, at 38.)

As an initial matter, a medical consultant's failure to consider the complete medical record does not necessarily compel rejection of the medical consultant's opinion "or the ALJ's finding relying thereon." *Libertore v. Colvin,* 15-CV-1483, 2016 WL 7053443, at * 7 (N.D.N.Y. Dec. 5, 2016) (citing *Abar v. Colvin*, 15-CV-0095, 2016 WL 1298135, at *6 (N.D.N.Y. Mar. 31, 2016)); *accord Atiyeh v. Comm'r,* 16-CV-0392, 2017 WL 74717, at *5 (N.D.N.Y. Jan. 6, 2017); *Camille v. Colvin,* 104 F. Supp 3d 329, 343-44 (W.D.N.Y. May 19, 2015), *aff'd,* 652 F. App'x 25, 28-29 (2d Cir. 2016) (finding that the ALJ did not err in assigning great weight to a medical consultant's opinion where the subsequent treatment notes not reviewed by the consultant were not materially different from the medical records reviewed by the consultant).

Here, Dr. Satloff properly reviewed Plaintiff's complete medical record for the relevant period. Moreover, as discussed above, the ALJ properly (1) considered Dr. Schwartz's treatment records even after Plaintiff's date last insured, (2) noted that the treatment records at issue showed that Plaintiff's mental impairments had improved (with only "mild" symptoms indicated by August 2011), and (3) determined that Dr. Schwartz's April 2013 opinion was only entitled to "limited" weight. (T. 34.) Because Plaintiff's later mental treatment records not reviewed by Dr. Satloff indicated that her mental impairments and symptoms had generally improved, the Court cannot conclude that Dr. Satloff would have assessed greater mental restrictions had he reviewed the complete record, or that the ALJ's reliance on Dr. Satloff's opinion was harmful to Plaintiff. *Atiyeh,* 2017 WL 74717, at *5.

For these reasons, the Court finds that substantial evidence supports the ALJ's assessment of Dr. Schwartz and Dr. Satloff's opinions, and remand is not required on this basis.

### iii.    Treating Internist Dr. Kadura

On May 10, 2011, Dr. Kadura provided an assessment of Plaintiff's work-related physical abilities and limitations due to back pain, bilateral carpal tunnel syndrome, neck pain, and anxiety.  (T. 714-15.)  Dr. Kadura opined that Plaintiff could walk for two to four hours, stand for two to four hours, and sit for one to two hours in an eight-hour workday.  (T. 715.)  Dr. Kadura further opined that Plaintiff was "severely limited" (or could perform one to two hours) of the following activities: lifting/carrying, pushing/pulling, bending/squatting, using her hands, and climbing stairs.  (*Id.*)  Dr. Kadura opined that Plaintiff had "some limitations" (or could perform two to four hours) of the following activities: walking, standing, climbing stairs, and using public transportation.  (*Id.*)  Finally, Dr. Kadura opined that Plaintiff had no limitation (or could perform more than four hours) of the following mental activities: understanding and remembering simple and complex instructions, maintaining attention and concentration, interacting appropriately with others, maintaining socially appropriate behavior, maintaining basic standards of personal hygiene and grooming, making simple decisions, and performing simple tasks.  (*Id.*)

### iv.    Orthopaedic Surgeon and Medical Expert Dr. Axline

On April 3, 2013, Dr. Axline reviewed Plaintiff's medical records from the relevant period and provided an opinion of her work-related physical abilities and limitations.  (T. 148-53.)  Dr. Axline opined that Plaintiff could sit for two hours at a time, and for six hours in an eight-hour workday; stand for two hours at a time, and for four hours in an eight-hour workday; and walk for two hours at a time, and for four hours in an eight-hour workday.  (T. 949.)  Dr. Axline opined that Plaintiff could lift and carry up to 50 pounds occasionally, and lift and carry

up to twenty pounds frequently during an eight-hour workday.[9]  (T. 948.)  Dr. Axline opined that

Plaintiff had no limitation using her hands to reach, handle, finger, feel, and push/pull; and could

frequently use her feet to operate foot controls.  (T. 950.)  Finally, Dr. Axline further opined that

Plaintiff could frequently be exposed to unprotected heights, loud noise, extreme cold and

extreme heat; and could occasionally operate a motor vehicle, and be exposed to vibrations, dust,

odors, fumes, and pulmonary irritants.  (T. 952.)

In assessing Plaintiff's physical RFC, the ALJ afforded "significant" weight to Dr.

Axline's opinion, reasoning that he reviewed all of the medical records, and his specialty as an

orthopedic surgeon could reasonably be expected to give him insight into the limitations

imposed by Plaintiff's musculoskeletal impairment.  (T. 32.)  The ALJ further noted that, as a

medical expert with the Social Security Administration, Dr. Axline had knowledge of the

disability program.  (*Id.*)  The ALJ afforded "limited" weight to the physical opinion from

Plaintiff's treating internist, Dr. Kadura, reasoning that it was not consistent with the objective

medical evidence of record.  (T. 33.)

For example, the ALJ noted while Dr. Kadura's opinion stated that Plaintiff had bilateral

carpal tunnel syndrome, an October 2005 nerve conduction study showed that Plaintiff was

negative for carpal tunnel syndrome bilaterally.  (*Id.*)  The ALJ further noted that diagnostic

images of Plaintiff's cervical and thoracic spine in September 2011were normal, and an

EMG/nerve conduction study of the upper extremities in February 2011 also yielded normal

results.  (*Id.*)  The ALJ noted that, upon physical examinations, Plaintiff had normal muscle

strength her upper limbs, symmetric deep tendon reflexes, and a normal sensory exam.  (*Id.*)

---

[9]        The assessment form defined "occasionally" as very little up to one-third of an eight-hour
workday, and "frequently" as from one-third to two-thirds of an eight-hour workday.  (T. 948.)

Finally, the ALJ noted that Dr. Kadura's restrictive opinion did not identify any abnormal clinical findings to support the restrictive functional limitations he assessed. (*Id.*); 20 C.F.R. § 404.1527(c)(3) (stating that, the more a medical source presents evidence to support an opinion, particularly medical signs and laboratory findings, the more weight will be afforded to the opinion).

Plaintiff argues that the ALJ erred in weighing Dr. Kadura's opinion and improperly relied on Dr. Axline's opinion because he did not receive the complete record. (Dkt. No. 28, at 39-40 [Pl.'s Mem. of Law].) More specifically, Plaintiff argues that Dr. Axline did not review records documenting Plaintiff's history, diagnoses and treatment of de Quervain's tenosynovitis, and Dr. Kadura's opinion rendered on May 10, 2011. (*Id.*, at 39.) Defendant correctly notes that the evidence that Dr. Axline did not review was from outside of the relevant period, and Dr. Axline properly reviewed Plaintiff's medical records from the period under review. (T. 31.)

As discussed above, reviewing courts have found that a medical consultant's failure to consider the complete medical record did not necessarily compel rejection of the medical consultant's opinion "or the ALJ's finding relying thereon." *Libertore*, 2016 WL 7053443, at *7(citing *Abar v. Colvin*, 15-CV-0095, 2016 WL 1298135, at *6; *accord Atiyeh*, 2017 WL 74717, at *5; *Camille,* 652 F. App'x at 28-29 (2d Cir. 2016) (finding that the ALJ did not err in assigning great weight to a medical consultant's opinion where the subsequent treatment notes not reviewed by the consultant were not materially different from the medical records reviewed by the consultant).

Here, Dr. Axline noted Plaintiff's history of suspected bilateral wrist tenosynovitis, and observed that all exams were normal by October 2009. (T. 955.) Dr. Axline specifically cited an October 2011 examination of Plaintiff's wrists that exhibited no effusions or inflammation

and an "only minimally positive" Finklestein test. (*Id.*) (citing T. 804.) The same medical record noted that Plaintiff could flex and extend her wrist joints with minimal discomfort and radially and ulnar deviate her wrists with no significant pain, and Plaintiff had normal hand grip bilaterally, full strength in her bilateral upper limbs, and a grossly normal sensory exam. (*Id.*) Moreover, a review of the subsequent treatment records that Plaintiff cited indicates that, while some of the records referenced Plaintiff's history of bilateral wrist pain, none of the records indicated a definitive diagnosis of de Quervain's tenosynovitis or noted abnormal diagnostic or clinical findings upon examination of Plaintiff's wrists. (T. 707-13, 906-12.)

Therefore, the Court is not persuaded by Plaintiff's argument that the ALJ erred in relying on Dr. Axline's opinion because the subsequent treatment notes regarding Plaintiff's bilateral wrist pain that were not reviewed by Dr. Axline were not materially different from the medical records that Dr. Axline reviewed. *See Camille,* 652 F. App'x at 28-29 (finding that the ALJ did not err in assigning great weight to a medical consultant's opinion where the subsequent treatment notes not reviewed by the consultant were not materially different from the medical records reviewed by the consultant).

Moreover, the ALJ properly applied the regulations in evaluating Dr. Axline and Dr. Kadura's opinions. As discussed above, the ALJ considered Dr. Axline and Dr. Kadura's professional credentials, Dr. Kadura's treating relationship with Plaintiff and treatment notes, Dr. Axline's specialty as an orthopedic surgeon and his disability program knowledge, and the consistency of Dr. Axline and Dr. Kadura's opinions with other medical evidence in the record pursuant to 20 C.F.R. § 404.1527(c). (T. 30-36.) Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review each and every factor of the regulation. *Atwater*, 512 F. App'x at 70.

For these reason, the Court finds that the ALJ's assessment of the medical opinion evidence was supported by substantial evidence.  Therefore, remand is not required on this issue.

**B.      Whether the ALJ Was Required to Recontact Dr. Schwartz**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 33, at 18-22 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

The ALJ has an affirmative duty to develop a claimant's complete medical history.  20 C.F.R. § 404.1512(d); *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009).  By statute, an ALJ is required to develop a claimant's complete medical history for at least twelve months before an application for benefits was filed, and for a longer period when there is reason to believe that additional information is necessary to reach a decision.  *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998).  This duty exists even when a claimant is represented by counsel, due to the non-adversarial nature of a benefits proceeding.  *DeChirico,* 134 F.3d at 1184; *Lamay*, 562 F.3d at 509.

 Recontacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record.  20 C.F.R. § 404.1520b(c)(1).  Additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1520b(c)(1)-(4); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).  However, reviewing courts hold that an ALJ is not required to seek additional information absent "obvious gaps" in the administrative record that preclude an informed decision.  *Rosa*, 168 F.3d at 79 n.5; *see also Aldrich v. Astrue*, 08-CV-0402, 2009 WL

3165726, *7 (N.D.N.Y. Sept. 28, 2009) ("A treating physician is recontacted only in situations when the evidence received from the treating physician or other medical sources is inadequate for the ALJ to determine whether Plaintiff is disabled.").

Here, in addition to Dr. Schwartz's opinions and treatment notes, the record also contains psychiatrist and medical expert Dr. Satloff's function by function mental opinion discussed above in Part III.A.ii. of this Decision and Order. (T. 939-41.) Because the record evidence was adequate to permit the ALJ to make a disability determination, the ALJ was not required to recontact Dr. Schwartz. *See Carvey v. Astrue*, 389 F. App'x 50, 53 (2d Cir. 2010) ("Because the record evidence was adequate to permit the ALJ to make a disability determination, we identify no merit in . . . [the plaintiff's] claim that the ALJ was obligated *sua sponte* to recontact the treating physicians."); *Tankisi v. Comm'r,* 521 F. App'x 29, 34 (2d Cir. 2013) ("Given the specific facts of this case, including a voluminous medical record assembled by the claimant's counsel that was adequate to permit an informed finding by the ALJ, we hold that it would be in appropriate to remand on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity.").

For these reasons, the Court finds that the ALJ was not required to recontact Dr. Schwartz, and remand is not required on this basis.

**C.    Whether the ALJ's Credibility Analysis Was Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 33, at 24-25 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* (citing § 404.1529[c][3][i]-[vii]). Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,'

including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F.

App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638,

642 [2d Cir. 1983]).

Throughout the decision, the ALJ articulated the inconsistencies that she considered in

assessing the allegations of Plaintiff's symptoms, and in determining that Plaintiff is not as

limited as alleged, including medical opinion evidence, clinical and objective medical evidence,

and the treatment that Plaintiff sought to relieve her alleged symptoms. (T. 30-36.)

First, the ALJ considered medical opinion evidence that was inconsistent with Plaintiff's

allegations of disabling symptoms, including the mental opinion of Dr. Satloff and the physical

opinion of Dr. Axline discussed above in Part III.A. of this Decision and Order. (*Id.*) Second,

the ALJ considered clinical and objective medical evidence that was inconsistent with Plaintiff's

allegations of disabling symptoms, and Plaintiff's treatment for her alleged mental and physical

impairments. (*Id.*)

Regarding Plaintiff's mental impairments, the ALJ noted that Plaintiff alleged that she

was disabled due to depression, anxiety, irritable mood, low interest, and passive suicidal

ideation; and reported that she was easily distracted. (T. 28.) However, the ALJ found that

Plaintiff's allegations of disabling mental symptoms were contradicted by her normal mental

status examinations and her improvement with mental health treatment including medication.

(T. 34-36.) For example, the ALJ noted that by November 2010, Plaintiff reported that her

depression was well controlled with medication, her anxiety was improving with medication,

and treating psychiatrist Dr. Schwartz observed that Plaintiff's mental functioning was largely

within normal range. (T. 34.) The ALJ further noted that, while Plaintiff complained of

concentration deficits, Dr. Schwartz regularly noted that Plaintiff's attention and concentration were intact. (*Id.*)

Regarding Plaintiff's physical impairments, the ALJ noted that Plaintiff alleged that she was disabled due to swollen hands; and complained of pain in her wrists, hands, neck, and lower back. (T. 28-29.) However, the ALJ found that Plaintiff's allegations of disabling physical symptoms were contradicted by medical evidence from the relevant period, including normal diagnostic images of Plaintiff's cervical and thoracic spine and normal EMG/nerve conduction studies, and the limited treatment that Plaintiff sought for her bilateral de Quervain's tenosynovitis. (T. 36.) Notably, a plaintiff may be deemed less credible "if the level or frequency of treatment is inconsistent with the level of complaints." SSR 96-7p, 1996 WL 174186, at *8 (July 2, 1996); *accord, Sickles v. Colvin,* 12-CV-0774, 2014 WL 795978, at *22 (N.D.N.Y. Feb. 27, 2014) (finding that the ALJ properly cited Plaintiff's conservative treatment as a reason for discounting Plaintiff's credibility).

When the evidence of record "permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Here, the ALJ complied with the Regulations and articulated the inconsistencies that she considered in discrediting Plaintiff's allegations of disabling impairments. Accordingly, the Court finds that the ALJ's credibility assessment is supported by substantial evidence. Moreover, the ALJ appropriately used her discretion as fact-finder to determine that Plaintiff's statements were not credible. *Mimms v. Heckler,* 750 F. 2d 180, 186 (2d Cir. 1984.)

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982). "It is the function of the Secretary, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (quoting *Carroll*, 705 F.2d at 642) (internal quotation marks and alterations omitted). Accordingly, the Court must uphold an ALJ's credibility determination where, as here, it is supported by substantial evidence. *Aponte*, 728 F.2d at 591. For the foregoing reasons, remand is not required on this basis

### D. Whether the Appeals Council Erred in Considering Plaintiff's Letter Brief

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 33, at 24-25 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only when it relates to the period on or before the date of the ALJ's decision. 20 C.F.R. §§ 404.970(b), 404.976(b)(1); HALLEX I–3-3-6, 1993 WL 643129 (Dec. 27, 2012); *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). The Appeals Council will evaluate the entire record, including any new and material evidence submitted, if it finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record. 20 C.F.R. § 404.970(b); HALLEX I–3-3-6; *Paradise v. Comm'r*, 13-CV-0828, 2014 WL 4384230, at *2 (N.D.N.Y. Sept. 3, 2014). The weight of the evidence means that it is "more likely than not" that the totality of the evidence, including the additional evidence, would change the ALJ's actions, findings, or conclusion. HALLEX I-3-9-4, 2013 WL 643197 (Mar. 8, 2013).

Here, Plaintiff argues that the Appeals Council's failure to consider the entire letter memorandum accompanying her request for review was a denial of administrative due process and constitutes reversible error. (Dkt. No. 28, at 28-32 [Def.'s Mem. of Law].) Plaintiff notes that only one page of her timely submitted 15-page letter memorandum was included in the administrative record and identified in the Appeals Council's denial of Plaintiff's request for review. (*Id.* at 29) (referencing T. 17). Plaintiff appears to argue that the case law contained in the balance of her letter memorandum constitutes "new and material evidence" that the Appeals Council was required to consider in conjunction with the administrative record. (*Id.* at 29.) Plaintiff further argues that it was clear that additional language followed the first page of her letter memorandum, and administrative due process required the Appeals Council to contact Plaintiff's representative and provide the opportunity to correct the submission. (*Id.* at 30-31.)

As an initial matter, Plaintiff identified no authority supporting the proposition that it is the Appeals Council's responsibility to ensure that litigants have filed their briefs or other documents in full. In any event, the Court agrees with Defendant that case law cannot be considered new and relevant evidence because it is not "relevant to the claimant's condition during the time period for which benefits were denied." *Pollard v. Halter,* 377 F.3d 183, 193 (2d Cir. 2004) ("New evidence is 'material' if it is both (1) 'relevant to the claimant's condition during the time period for which benefits were denied and' (2) 'probative.'") *Pollard v. Halter,* 377 F.3d 183, 193 (2d Cir. 2004) (quoting *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988). Therefore, the Court finds that remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 28) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 33) is

**<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **<u>AFFIRMED</u>**; and it

is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: March 10, 2017
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge